UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:20-cv-135-MOC-WCM

| KRISTIE SLUDER, | ) |
| --- | --- |
| Plaintiff, pro se, | ) |
| vs. | ) ORDER |
| R. PATRICK BENTANCOURT, et al., | ) |
| Defendants. | ) |

**THIS MATTER** comes before the Court on a Motion to Dismiss filed by Defendants R. Patrick Betancourt, Stacey Jenkins, and Macon County Department of Social Services Board of Directors, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure. (Doc. No. 12). Also pending is a motion to dismiss, filed by Defendant Lisa Cauley pursuant to Rule 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 13).

### I. PROCEDURAL BACKGROUND

On June 3, 2020, Plaintiff Kristie Sluder, proceeding pro se, filed this action, pursuant to 42 U.S.C. § 1983, alleging that she was "deprived of Liberty and the Pursuit of Happiness without Due Process" when a child in Plaintiff's foster care was removed from her home without first allowing Plaintiff notice and opportunity to be heard. (Doc. No. 1 at p. 3; Doc. No. 1-1). Plaintiff has named the following person and entities as Defendants: (1) R. Patrick Betancourt, in his official capacity as Macon County DSS Director and in his individual capacity; (2) Stacey Jenkins, in her official capacity as a social worker and in her individual capacity; (3) Lisa Cauley, in her official capacity as the Division Director of Social Services and in her individual capacity; and (4) the Macon County Department of Social Services Board of Directors in its

1

official capacity.  Plaintiff also alleges that Defendants violated the Adoption and Safe Families Act of 1997, specifically 42 U.S.C. § 675(5)(G), by failing to give Plaintiff proper notice before removing the minor child from Plaintiff's home.  (Id.).  Plaintiff seeks compensatory damages, punitive damages, and injunctive relief against Defendants.

On August 12, 2020, Defendants Bentacourt, Jenkins, and the Macon County Department of Social Services Department of Directors filed their pending motion dismiss.  On August 14, 2020, Defendant Cauley filed her own motion to dismiss, in which she incorporates the arguments of the other Defendants, and she also presents her own arguments in support of her motion to dismiss.  Plaintiff filed a response to the motions to dismiss on September 11, 2020, and Defendants filed a Reply on September 18, 2020.  Thus, this matter is ripe for disposition.

## II.     FACTUAL BACKGROUND

Plaintiff's home is licensed as a therapeutic foster home.  (Doc. No. 1-1).  On February 26, 2017, Defendant Stacey Jenkins received a court order to place the minor child (MC), a ten-year-old girl, with Plaintiff.  The Macon County Department of Social Services placed the MC into Plaintiff's home on February 27, 2017.  (Id.).  The MC is diagnosed with ADHD, ODD, and PTSD, which requires special care and attention.

On July 18, 2018, Defendant Jenkins obtained a court order to remove the MC from Plaintiff's home, and MC was subsequently placed in a group home in Winston-Salem.  Plaintiff alleges that neither Plaintiff nor the MC were happy with the removal of the MC from Plaintiff's home.  Plaintiff alleges that she was told that MC was being moved because she "needed a higher level of care" and that "adoption is the goal for her."  (Doc. No. 1-1, p. 1).  Plaintiff alleges that she has grieved the loss of MC from her home.  (Id., p. 1–2).  Plaintiff asserts that she was never noticed by the clerk of court to be heard at the permanency planning review as

required by federal law or to otherwise speak and present materials concerning the MC.  Plaintiff also alleges she was unable to provide information concerning the MC's guardian ad litem's conflict of interest.  (Id., p. 2).  Plaintiff alleges she was injured because she was unable to appear in court and present evidence and request that the court grant her guardianship of the MC.  (Id., p. 3).  Plaintiff alleges that she complained to Defendant Betancourt on July 19, 2018, about the removal of the MC.  (Id.).  Plaintiff further alleges that Defendant Cauley was informed of the MC's situation at a public meeting in Sylva, North Carolina, in October 2018.  Plaintiff alleges that Defendant Cauley indicated she would set up an appointment to meet with Plaintiff.  Defendant Cauley's assistant allegedly contacted Plaintiff, but a meeting was never scheduled.  (Id., p. 3).  Plaintiff alleges that Defendants should have known that, as a foster parent of the MC, she was entitled to be noticed by the clerk of court for permanency planning and the judicial review hearing, pursuant to the "Adoption and Safe Families Act, United States Code, the NC General Statutes, and the NC Administrative Code" in order to provide evidence about the placement of the MC.  (Id., pp. 3–4).

### III.     STANDARD OF REVIEW AND DISCUSSION

Defendants move to dismiss Plaintiff's action, in part, based on lack of standing, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Under Rule 12(b)(1), the defendant may file a motion to dismiss based on a lack of subject matter jurisdiction.  FED. R. CIV. P. 12(b)(1).  Where a defendant files such motion, the plaintiff bears the burden to prove that subject matter jurisdiction exists.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Additionally, a motion to dismiss for lack of subject matter jurisdiction may be brought on the grounds that the complaint fails to allege sufficient facts to invoke the court's jurisdiction and, when made on those grounds, all the facts asserted in the complaint are presumed to be true.  Id.

3

Federal courts are courts of limited jurisdiction and a prerequisite to suit is that Plaintiff have either a Case or Controversy. U.S. Const. art. III, § 2. "The doctrine of standing gives meaning to these constitutional limits by 'identifying those disputes which are appropriately resolved through the judicial process.'" Susan B. Anthony List v. Driehaus, 573 U.S. 149, 157 (2014) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)) (internal punctuation omitted). Therefore, to "establish standing, a plaintiff must show: (1) an injury in fact; (2) a sufficient causal connection between the injury and the conduct complained of; and (3) a likelihood that the injury will be redressed by a favorable decision." Wikimedia Found. v. Nat'l Sec. Agency, 857 F.3d 193, 207 (4th Cir. 2017). For Plaintiff to establish that she suffered an injury in fact, Plaintiff "must show that [she] suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Beck v. McDonald, 848 F.3d 262, 270 (4th Cir. 2017) (quoting Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548 (2016)).

Here, Plaintiff appears to be bringing a Fourteenth Amendment due process claim. The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV. To determine whether due process protection is applicable, the court must first consider whether the asserted interest is protected by the Fourteenth Amendment's protection of life, liberty, or property. Miller v. Clinton Cty., 544 F.3d 542, 551 (3d Cir. 2008). The Supreme Court in Wilkinson v. Austin, addressed the two ways in which a protected liberty interest could arise: (1) "from the Constitution itself, by reason of guarantees implicit in the word 'liberty,'" or (2) "from an expectation or interest created by state laws or policies." 545 U.S. 209, 221 (2005).

Plaintiff appears to assert that her expectation of a liberty interest is a creation of North

4

Carolina law and that it also arises from specific language in the federal Adoption and Safe Families Act of 1997, which provides foster parents with notice and opportunity to be heard in a proceeding regarding a foster child.[1] The Court finds that Plaintiff does not have a Fourteenth Amendment protected liberty interest in the MC's custody placement; therefore, the failure of Defendants to give her notice and opportunity to be heard before removing the MC from her home did not violate her procedural due process rights. This is because, in North Carolina, "legal custody never passes to any foster parents charged with the duty of caring for and supervising a child. Foster parents are given only physical custody, which the department or agency having legal custody is free to revoke at any time." In re Asbury, 125 N.C. App. 143, 146, 479 S.E.2d 229, 230 (1997) (quoting Oxendine v. Catawba Cty. Dep't of Soc. Servs., 303 N.C. 699, 707, 281 S.E.2d 370, 375 (1981)) (internal punctuation omitted); see also Wildauer v. Frederick Cty., 993 F.2d 369, 373 (4th Cir. 1993) (concluding, without reference to state law, that a foster parent did not have a constitutionally protected liberty interest in retaining possession of her foster children); accord K.K. v. Berks Cty., No. 5:15-CV-00475, 2016 WL 1274052, at *4 (E.D. Pa. Mar. 31, 2016) ("While the possibility therefore exists that state law could afford foster families constitutionally protected interests, "'attempt[s] to establish a due process liberty interest between foster parents and children have continued to fail.'") (quoting Kevin B. Frankel, The Fourteenth Amendment Due Process Right to Family Integrity Applied to Custody Cases Involving Extended Family Members, 40 COLUM. J.L. & SOC. PROBS. 301, 333

---

[1] Section 675(5)(G) of the Act defines a "case review system" as a system for assuring that "the foster parents (if any) of a child and any preadoptive parent or relative providing care for the child are provided with notice of, and a right to be heard in, any proceeding to be held with respect to the child, except that this subparagraph shall not be construed to require that any foster parent, preadoptive parent, or relative providing care for the child be made a party to such a proceeding solely on the basis of such notice and right to be heard."

(2007)).

The North Carolina legislature, "while specifically including foster parents within definition of caretaker, did not include foster parents within definition of in loco parentis." Liner v. Brown, 117 N.C. App. 44, 50, 449 S.E.2d 905, 908 (1994) (citing the former Juvenile Code then codified at N.C. GEN. STAT. §§ 7A–517(5) & (16.1), now codified at N.C. GEN. STAT. § 7B-101). The North Carolina legislature has further made clear that a "foster parent . . . providing foster care for the juvenile is not a party to the case and may be allowed to intervene only if the foster parent has authority to file a petition to terminate the parental rights of the juvenile's parents pursuant to G.S. 7B-1103." N.C. GEN. STAT. § 7B-401.1 (2019) (emphasis added). Here, by the face of Plaintiff's Complaint, the MC moved in with Plaintiff on February 27, 2017, and she was moved out on sixteen months later, on July 18, 2018. Under N.C. GEN. STAT. § 7B-1103, Plaintiff did not have the authority to file a petition to terminate the parental rights of the MC's parents because the MC did not reside with Plaintiff "for a continuous period of two years or more." N.C. GEN. STAT. § 7B-1103(a)(5) (2019).

In her response to Defendants' motions to dismiss, Plaintiff asserts that the federal Adoption and Safe Families Act of 1997 was violated when "[Defendants] suppressed [her] voice and the voice of [the MC's] pediatrician and relevant other evidence that would have demonstrated the depth and degree of bonding and integration into [Plaintiff's] family system was completely denied." (Doc. No. 21, p. 1). Plaintiff, however, does not and cannot assert that the federal Adoption and Safe Families Act provides a private cause of action in the Fourth Circuit. See L.J. v. Wilbon, 633 F.3d 297, 312 (4th Cir. 2011) (unambiguously noting that "[t]o be clear, we do not now hold that § 671(a)(16) provides a private right of action").

Second, Plaintiff attempts to argue that she has standing to bring this cause of action

6

because she had a strong relationship with the MC.  In support, she cites to a "continuing legal education seminar by Jon B. Kurtz of Tash & Kurtz, PLLC and sponsored by the North Carolina bar foundation on May 2nd 2014." (Doc. No. 21, p. 6).  Plaintiff then argues that the best interest of the child is paramount, and that there are some instances when "other persons" can have standing to seek custody of a minor child.  Here, even assuming that Plaintiff qualified as an "other person," that only gave her the opportunity to petition the trial court for custody.  Plaintiff's qualification as an "other person," however, still would not have placed an affirmative duty on the trial court to send Plaintiff a notification of any hearings.  As the Court has already discussed, at most, it only gave Plaintiff the right to petition the trial court.  In sum, for these reasons, Plaintiff does not have a legally protected interest in the MC.  She, therefore, has not stated a claim for a violation of Fourteenth Amendment due process rights, or any other rights.  For this reason, Defendants' motions to dismiss will be granted.[2]

## IV. CONCLUSION

For the reasons stated herein, Defendants' motions to dismiss are granted, and Plaintiff's Complaint will therefore be dismissed with prejudice as to all Defendants.

**IT IS THEREFORE ORDERED** that:

(1) Defendants' Motions to Dismiss, (Doc. Nos. 12, 13), are **GRANTED**.

(2) This action is dismissed with prejudice.

---

[2] Although the Court does not address Defendants' alternative grounds for dismissal, the individual defendants appear to be protected by qualified immunity as well.  See Weller v. Dep't of Soc. Servs. for the City of Baltimore, 901 F.2d 387, 398 (4th Cir. 1990).

Signed: November 9, 2020

Max O. Cogburn Jr
United States District Judge